FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LUIS A. AVILA,<br><br>    Petitioner,<br><br>    v.<br><br>JAMES R. KEY,<br><br>    Defendants. | No. 2:18-cv-00212-SAB<br><br>**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF** |

Before the Court is Luis Avila's (Petitioner) Petition for Writ of Habeas Corpus by a Person in State Custody, ECF No. 5. Petitioner is an inmate at the Airway Heights Corrections Center pursuant to a judgment and sentence of the Asotin County Superior Court. He was convicted by jury verdict on one count of second degree rape. Petitioner requests this Court issue a writ of habeas corpus, arguing his conviction was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution. For the following reasons, the Court denies the petition for federal habeas relief.

//
//
//
//
//
//
//

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 1**

# FACTS[1]

On June 13, 2011, Detective Jackie Nichols received a report that Bonnie Larson, an elderly woman residing a Sycamore Glen Family Home – an adult care facility – had been raped at the facility by an employee later identified as Luis Avila.

Upon receiving this report, Detective Nichols called Mr. Avila and "asked if he would be willing to come in for an interview." Mr. Avila agreed, and together they "arranged a time which would be mutually convenient." Sharee Kromrei, the owner of Sycamore Glen, and a friend of Mr. Avila's, then contacted Detective Nichols and asked to be present at the interview. Detective Nichols agreed.

On June 16, 2011, Ms. Kromrei drove Mr. Avila to the sheriff's office. Detective Nichols escorted them to the interview room, which is

> where we conduct all our interviews, victim interviews, child/victim interviews, adult interviews. So it's, the setting is conducive to being comfortable it's got upholstered chairs, pictures on the walls kind of a neutral tone in the paint, carpet, you know, it's like a throw rug type carpet on the floor.

Once in the interview room, Ms. Kromrei and Mr. Avila sat next to each other on the side of the table nearest to the door. Nothing blocked Mr. Avila's path to the door.

Detective Nichols, in full uniform, told Mr. Avila he was free to leave at any time. At no time was Mr. Avila handcuffed or physically restrained. Neither Ms. Kromrei nor Mr. Avila were searched. Detective Nichols did not inform Mr. Avila of his *Miranda*[2] rights before interviewing him.

---

[1] The facts of this case are contained in the unpublished opinion of the Washington Court of Appeals, *Washington v. Avila*, No. 32113-4-III. ECF No. 9-1 at 750-54.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 2**

During the interview, which lasted no more than 20 minutes, Mr. Avila appeared to understand the questions he was asked and the allegations at issue, never declined to answer any questions, never requested an interpreter or a lawyer, and never asked to leave. When the interview was over, Mr. Avila and Ms. Kromrei walked out of the sheriff's office together.

Nearly a year later, on May 15, 2012, the State charged Luis Avila with the second degree rape of Bonnie Larson. In preparation for trial, defense counsel did not request a CrR 3.5 hearing to determine whether Mr. Avila's statements to Detective Nichols had been made voluntarily. At trial, Detective Nichols testified about the statements Mr. Avila made during the interview. Mr. Avila also testified at trial in his own defense. The statements Detective Nichols attributed to Mr. Avila were inconsistent with Mr. Avila's trial testimony. At the conclusion of the trial, the jury found Mr. Avila guilty, and the court sentenced him to 90 months to life.

## PROCEDURAL HISTORY

### Direct Appeal

On direct appeal, Petitioner challenged the voluntariness of his statements to Detective Nichols during the June 16, 2011 interview. In response, the State requested the matter be remanded to the trial court for a CrR 3.5 hearing. The Court of Appeals granted the State's motion and remanded the case for a CrR 3.5 hearing.

The superior court held a CrR 3.5 hearing on January 15, 2015. The superior court concluded Petitioner's statements to Detective Nichols on June 16, 2011, were not the result of a custodial interrogation. Therefore, Petitioner's statements were voluntary and admissible. The superior court's Order contained the following findings of fact:

1. On June 12, 2011, Bonnie J. Larson, an elderly resident of the Sycamore Glen Family Home, a facility licensed by the state for long-term care,

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 3**

told various people at her church that she had been forcibly raped by an employee of the home the previous night.
2. On June 13, 2011 when at the local hospital for a routine appointment, Ms. Larson reported again that she had been raped at Sycamore Glen on June 11, 2011 by a caregiver named "Luis." She was given a rape examination but there were no overt signs of assault. The medical personnel collected "swabs" as part of a standard rape kit, which were sent to the Washington State Patrol Crime Lab for analysis.
3. The medical personnel contacted law enforcement and Detective Jackie Nichols of the Asotin County Sheriff's Office was assigned the case and responded to the hospital to investigate.
4. Detective Nichols interviewed Ms. Larson at the hospital and spoke with other potential witnesses.
5. The Detective contacted Saree Kromrei, the Administrator of Sycamore Glen. Ms. Kromrei told Detective Nichols that the employee identified as "Luis" was Luis A. Avila. She indicated that she was a friend of Mr. Avila's and that she had heard about the report but did not believe it. She told the Detective that she had already spoken with Mr. Avila and that he had told her that the accusations were "completely false."
6. Over the next few days Detective Nichols continued her investigation and at some point called Mr. Avila on the phone and asked if he would be willing to come in for an interview. Mr. Avila agreed to come in and together they arranged a time which would be mutually convenient.
7. After speaking with Mr. Avila on the phone, Detective Nichols received a call from Ms. Kromrei. She asked if she could accompany Mr. Avila to the interview. Detective Nichols told her that she had no objection and that she was welcome to attend.
8. On June 16, 2011, during regular working hours. Luis A. Avila and Sharee Kromrei arrived at the Asotin County Sheriff's Office for the interview, having driven to that location in a private vehicle. They were met by Detective Nichols in the lobby and escorted to the interview room inside of the Sheriff's Office.
9. The interview room is regularly used for non-custodial interviews of witnesses, victims (including child victims), and persons of interest. The room is decorated in a nonthreatening manner with "homey" decor which includes muted lighting, upholstered chairs, pictures on the walls, and a small throw rug on the floor.
10. The interview room is near the back of the Sheriff's Office and the back exit door of the Office is clearly visible from the door of the interview room.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 4**

11. Detective Nichols, in full uniform including a badge and sidearm, was the only law enforcement person in the room, although on the way to the interview room other uniformed officers were visible at various workstations in the Sheriff's Office.
12. Once in the room Ms. Kromrei sat next to Mr. Avila. The seating arrangement was such that Mr. Avila and Ms. Kromrei were closer to the door and neither the Detective nor any other physical obstructions were between them and the door.
13. Prior to asking any questions, Detective Nichols told Mr. Avila that he was not under arrest and that he was free to leave at any time. At no time during the interview was Mr. Avila handcuffed or physically restrained in any manner. Neither he nor Ms. Kromrei was searched nor were they even asked whether they were carrying any weapons.
14. Detective Nichols did not advise Mr. Avila of his Miranda rights prior to interviewing him.
15. Detective Nichols did not offer an interpreter.
16. The Detective began the interview by telling Mr. Avila about the accusation and asked him for his account of the evening in question.
17. Mr. Avila vehemently denied the allegation that he had any sexual contact with Ms. Larson. He stated that he was never in the bathroom with her, was never alone with her, and denied any sexual contact whatsoever. When he was specifically asked if there would be any reason that his DNA could be found inside of Ms. Larson, he stated "No."
18. Detective Nichols asked Mr. Avila if he would be willing to take a polygraph test in regards to the allegations. He responded, without hesitation "Yeah, I will pass."
19. At no time did Mr. Avila ask for a lawyer he never asked to leave; never asked for questioning to stop nor did he decline to answer any questions; he never asked to take a break from questioning. (Detective Nichols testified at the hearing that had he done so, she would have honored any such requests).
20. The entire interview lasted no more than twenty minutes and at the conclusion Mr. Avila walked out of the Sheriff's Office with Ms. Kromrei and they left together.
21. Detective Nichols testified that at the time she spoke with Mr. Avila she was still in the "investigatory phase" and that at that time she did not have probable cause to arrest Luis A. Avila.
22. No criminal charges were filed against Mr. Avila until eleven months after the interview and then only after the Crime Laboratory confirmed

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 5**

        that swabs taken from Ms. Larson during her examination at the hospital contained spermatozoa and testable DNA.
23. Mr. Avila had a substantial history of involvement with the judicial system in the United States, which included two separate full divorce proceedings, a child support adjudication, at least five traffic infractions and six different criminal charges in the state of Idaho between 2006 and the date of the interview in 2011. During these proceedings Mr. Avila had been represented by both appointed and privately retained counsel.

Petitioner appealed the superior court's findings of fact and conclusions of law. The Washington Court of Appeals affirmed the superior court's conclusion that Detective Nichols' interview of Petitioner did not constitute a custodial interrogation. The Washington Supreme Court denied Petitioner's request for discretionary review on September 6, 2017.

## STANDARD

A petition for writ of habeas corpus on behalf of a prisoner in state custody is brought under 28 U.S.C. § 2254. Relief under § 2254 is limited to "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was "contrary to," or involved an "unreasonable application of," clearly established federal law as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Only "clearly established Federal law, as determined by the Supreme Court of the United States," can be the basis for relief under the AEDPA. *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "Clearly established Federal law" is the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

Under the "contrary to" clause, a federal court may grant habeas relief only if "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 6**

Supreme Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may grant habeas relief only if "the state court identifies the correct governing legal principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal court may also grant a writ of habeas corpus if a material factual finding of the state court reflects "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

28 U.S.C. § 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### EVIDENTIARY HEARING

"Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[A]n evidentiary is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Stated differently, if the state court record "precludes habeas relief" under § 2254(d), "a district court is 'not required to hold an evidentiary

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 7**

hearing.'" *Cullen v. Pinholser*, 563 U.S. 170, 183 (2011) (quoting *Schriro*, 550 U.S. at 474.

## DISCUSSION

Petitioner argues that State violated his Fifth and Fourteenth Amendment rights when it introduced into evidence Petitioner's statements to Detective Nichols. Petitioner argues that his interview with Detective Nichols on June 16, 2011 was a custodial interrogation, which required Detective Nichols to advise Petitioner of his *Miranda* rights prior to questioning. Because Petitioner was not given a *Miranda* warning, he claims his statements were involuntary and inadmissible at trial.

**A. Custodial Interrogation.**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 (1964).

The Supreme Court has established procedural safeguards that require police to advise a criminal suspect of his rights, under the Fifth and Fourteenth Amendments, prior to commencing a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Police are required to advise criminal suspects of their *Miranda* rights only when the person is subjected to custodial interrogation by government officials. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995).

An objective test is used to determine whether a suspect is "in custody" for purposes of *Miranda*. *Yarborough v. Alvarado*, 541 U.S. 652, 662-63 (2004). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). Thus, to determine whether a suspect is "in custody," federal courts

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 8**

must examine " 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.' " *Yarborough*, 541 U.S. at 663 (quoting *Stansbury*, 511 U.S. at 322).

We turn now to the case before us and ask if the state court's adjudication of Petitioner's claim was "contrary to," or involved an "unreasonable application of," clearly established federal law when it concluded that Petitioner was not in custody[3] at the time of his interview with Detective Nichols.

Following the CrR 3.5 hearing on January 15, 2015, the superior court entered an Order memorializing its findings of facts and conclusions of law regarding the admissibility of Petitioner's statements to Detective Nichols. The superior court ruled that the June 16, 2011 interview as not a custodial interrogation requiring *Miranda* warnings.

Petitioner appealed the superior court's conclusion and challenged its findings of fact. The Washington Court of Appeals took judicial notice of the superior court's findings of fact, concluding that the factual findings were supported by substantial[4] evidence. The Court of Appeals affirmed the superior court's conclusion that the June 16, 2011 interview was not a custodial interrogation.

---

[3] There is no dispute that Detective Nichols's interview of Petitioner on June 16, 2011, was an "interrogation," for purposes of *Miranda*.

[4] With respect to Findings of Fact Nos. 13 and 16, the Court of Appeals found substantial evidence supported only part of the findings. ECF No. 9-1 at 758. Nonetheless, the court concluded that the unsupported portions did not affect the ultimate conclusion that the June 16, 2011 interview was not a custodial interrogation. *Id*.

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 9**

Petitioner argues that the Court of Appeals' decision was erroneous because (1) he is a Spanish speaking Guatemalan immigrant with a marginal education who speaks broken English; (2) his understanding of English and the American Judicial System is very limited; (3) he was put in the untenable position of being summoned to a police station and subjected to an interrogation that occurred in English; and (4) Detective Nichols was aware of Mr. Avila's language barrier at the time of the interrogation and never inquired whether he needed an interpreter, nor was one offered or provided. ECF No. 5 at 12.

The Washington Court of Appeals addressed Petitioner's arguments, either explicitly or implicitly, in reaching its decision on the issue of custodial interrogation.

> Mr. Avila makes a number of arguments as to why a person in his position would not believe he had a right to leave the interview with Detective Nichols. First he argues he has limited English comprehension and nothing is known about his education. However, though Mr. Avila is Guatemalan, Detective Nichols testified he appeared to understand her questions and that his answers to the questions were appropriate. Moreover, Mr. Avila prepared a written statement that he read to the court at the CrR 3.5 hearing that demonstrated his high level of English proficiency. His ability to understand sophisticated legal concepts is also demonstrated by his first statement of additional grounds for review (SAG). There is strong evidence that Mr. Avila had a sufficient grasp of English to understand that his participation in the interview was not compulsory.
>
> Moreover, his experience with the legal system is some evidence that he was aware of what a custodial law enforcement environment looks like. He was arrested twice in 2006, twice in 2007, and once in both 2008 and 2010. The trial court could reasonably consider whether, after six arrests, Mr. Avila had enough experience to understand that the interview with Detective Nichols was not a custodial interrogation.
>
> Second, Mr. Avila argues he understood Detective Nichols's "asking" him to come to sheriff's office as an order and not a request. The trial court's unchallenged findings weaken this argument. The court found that

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 10**

Detective Nichols "asked" Mr. Avila if he would be "willing" to come down for an interview, and that they agreed to a time that was "mutually convenient." Additionally, the court found that Ms. Kromrei drove Mr. Avila to the interview – he was not transported there by law enforcement. These facts are indicative of a request, rather than an order, to come to the interview.

Third, Mr. Avila argues he did not understand he could leave because the interview room was behind locked doors at the stationhouse, and Detective Nichols was in uniform when she questioned him. However, the court found that before beginning the interview, Detective Nichols told Mr. Avila he was free to leave at any time. The court also found that Mr. Avila was not searched, handcuffed, or restrained in any way, that he sat on the side of the table nears the door, and that no obstacle blocked his path to the door. Moreover, the interview only lasted 20 minutes and when it was over Mr. Avila simply walked out. A reasonable person in Mr. Avila's position would have known he was free to leave.

Fourth, Mr. Avila argues the court improperly placed great weight on the fact that Ms. Kromrei was present during the interview. Mr. Avila states he was never asked if he would allow Ms. Kromrei to be present, and that no information suggests she would be qualified to help him. Mr. Avila's own testimony at the hearing undercuts these arguments:

> When I agreed about the interview that was after talking to [Sharee] and I explain her what I was afraid of and she is the one that told me not to be afraid because she as going to talk to Det. Nichols and she asked if she could be with me during the interview and she said that if I would have been arrested then she would have been able to help me. That's the reason why [Sharee] was present during the interview.

This shows Mr. Avila knew Ms. Kromrei was going to be at the interview, and that he wanted her there. In addition, he conferred with her about whether to allow the interview to be recorded, which not only shows that she helped him, but that he knew he had the right to refuse. The simple fact of Ms. Kromrei's presence shows Mr. Avila was not isolated and indicates a noncustodial environment.

Fifth, Mr. Avila argues that his choice to attend the interview was constrained because he thought the interview might concern working for Ms. Kromrei "under the table," and because he knew he was suspected of raping Ms. Larson. This argument is not persuasive because Detective Nichols told him he was free to leave at any time. Mr. Avila's psychological state of mind does not show the interview was custodial in the absence of any indication that his freedom of movement was restricted.

Finally, Mr. Avila argues the trial court improperly took judicial notice of the setup of the interview room. As discussed above, sufficient evidence supports the court's finding about the environment of the interview room.

Nothing about the interview suggested a custodial interrogation. The record supports the trial court's finding that the interview was not a custodial interrogation.

Petitioner fails to show the Court of Appeals' decision was "contrary to," or based on an "unreasonable application of" clearly established federal law. The Court of Appeals took the superior court's findings of fact, which are presumed[5] to be correct, and reasonably applied the clearly established federal law relevant to determining whether an individual is in custody for purposes of *Miranda*. Accordingly, Petitioner's claim is denied.

## CERTIFICATE OF APPEALABILTY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies

---

[5] If a habeas petitioner challenges the determination of a factual issued by a state court, such determination shall be presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 12**

this standard when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Boyer v. Chappell*, 793 F.3d 1092, 1106 (9th Cir. 2015) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted). The Court finds Petitioner has not made such a showing.

Accordingly, **IT IS HEREBY ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody, ECF No. 5, is **DISMISSED**, pursuant to 28 U.S.C. § 2244(d).
2. The Certificate of Appealability is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order, furnish copies to counsel and pro se Petitioner, **enter judgment** against Petitioner, and **close** this file.

**DATED** this 25th day of July 2019.



Stanley A. Bastian
United States District Judge

**ORDER DENYING PETITION FOR FEDERAL HABEAS RELIEF ^ 13**